IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TONY ASBERRY,

Plaintiff, No. 2:09-cv-1494 MCE KJN P

vs.

MATHEW CATE, et al.,

Defendants. FINDINGS AND RECOMMENDATIONS

_______________________________/

Plaintiff is a state prisoner, incarcerated at California State Prison-Sacramento ("CSP-SAC"),[1] who proceeds without counsel and in forma pauperis, with a civil rights complaint filed pursuant to 42 U.S.C. § 1983. This action proceeds on the original complaint, against defendants Phelps and Hernandez.[2] Presently pending before the court are: (1) defendants' motion to dismiss plaintiff's Eighth Amendment claim; and (2) plaintiff's second motion for a preliminary injunction. For the reasons that follow, this court recommends that defendants' motion to dismiss be granted, and plaintiff's motion for preliminary injunctive relief

[1] All references to "CSP-S," in documents referenced and quoted throughout these findings and recommendations, have been changed to "CSP-SAC," for purposes of uniformity.

[2] On April 15, 2011, defendants O'Brien, J. Walker, Bauser and Cate were dismissed from this action. (Dkt. No. 24; see also Dkt. Nos. 15, 17, 18.)

be denied.

I. Background

This action proceeds against defendants Phelps and Hernandez, based on the following allegations, as summarized by the undersigned upon the initial screening of the complaint, pursuant to 28 U.S.C. § 1915A:

> Plaintiff, who is black, alleges that in April 2008, after plaintiff's cellmate was placed in administrative segregation, defendant correctional officer Phelps, a sergeant, ordered plaintiff to find himself another cellmate so that Phelps could place two of his "favorite" inmates, both white, in plaintiff's cell located in CSP-S's "B-yard, Building Two." Plaintiff states that he found an inmate to cell with . . . , signed and turned in the necessary paperwork, but within the hour Phelps cancelled the move. Plaintiff alleges that Phelps again ordered plaintiff to find a cellmate. Plaintiff alleges that there were no other open cells, and thus he was unable to find another cellmate. Plaintiff alleges that Phelps responded by ordering plaintiff cuffed; that correctional officer "John Doe 1" painfully cuffed plaintiff, verbally assaulted him, stripped plaintiff to his boxer shorts, and then forced plaintiff to stand in a holding cage in the cold for more than two hours. Plaintiff alleges that when he requested to use a restroom, correctional officer "John Doe 2" told plaintiff to "piss on yourself," and stated that Phelps had told him to give plaintiff nothing.
>
> Plaintiff alleges that he was next moved to a suicide cell, for a period of approximately twelve hours. Plaintiff alleges that the cell was filthy, smelled of urine and feces, had no toilet paper, mattress, or covers, and that plaintiff was required to sleep on the floor in his boxer shorts. Plaintiff was then placed in a cell in "Building Three." However, plaintiff alleges that Phelps again summoned plaintiff and ordered him to find himself a cellmate. Plaintiff alleges that he was unable to do so, and, as a result, correctional officer "John Doe 3" cuffed, stripped, and threatened plaintiff, and placed him in a holding cage for six hours with no protection from the weather.
>
> Plaintiff was then moved to administrative segregation. Plaintiff alleges that Phelps and correctional officer "John Doe 4" falsified the necessary documents, and that correctional officer "John Doe 5" affirmed the placement despite interviewing plaintiff. Plaintiff contends that throughout this period he felt threatened and unsafe; that he is a patient within the Correctional Clinical Case Management System ("CCCMS"), and felt increased paranoia; that he was afraid to return to B-yard and refused to leave administrative segregation until defendant CSP-S Warden Walker

> (who allegedly "did nothing about the situation in B-yard that led to plaintiff being in ad/seg in the first place") "personally ensured" plaintiff's safety.
>
> . . . Plaintiff appears to state potentially cognizable claims against defendant Phelps under the Eighth Amendment's proscription against cruel and unusual punishment, the Fourteenth Amendment's protections against arbitrary and capricious punishment [substantive due process], and the Fourteenth Amendment's right to equal protection (right to be free from racial discrimination). Plaintiff's equal protection challenge is also made pursuant to the California Constitution, Article I, section 7. Accordingly, the court will authorize service of plaintiff's complaint on defendant Phelps.
>
> . . . Plaintiff may [also] state a potentially cognizable due process claim against defendant Hernandez, premised on the factual allegations set forth in plaintiff's attached administrative grievances, which are not repeated (only referenced) in the complaint. [These allegations include the contention that, in April 2008, when plaintiff was initially removed from his cell, Hernandez boxed-up plaintiff's personal property, delayed preparing an inventory of plaintiff's items, and failed to ensure the return of two CDs, a fan, and a radio.] . . . The court will authorize service on defendant Hernandez in order to clarify plaintiff's factual allegations and assess the merits of plaintiff's claim against him.

(Dkt. No. 7 at 3-5.)

II. Defendants' Motion to Dismiss

Defendants move to dismiss plaintiff's Eighth Amendment claim against defendant Phelps, on the ground that plaintiff failed to administratively exhaust his allegations of mistreatment when placed in the holding cages, and his allegation that the suicide cell in which he was placed was "filthy." See Estelle v. Gamble, 429 U.S. 97, 102 (1976) (the Eighth Amendment prohibits the imposition of cruel and unusual punishment, and embodies "broad and idealistic concepts of dignity, civilized standards, humanity and decency") (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)).

Review of the pertinent administrative grievance (Log. No. SAC-08-01839), supports defendants' representations: while plaintiff complained of Phelps' allegedly capricious and racially motivated conduct depriving plaintiff of his double-cell status, including temporary

placement in holding cells and a suicide cell, and then in administrative segregation, the grievance does not address the alleged physical condition of the interim cells, or plaintiff's alleged treatment by staff during his placement those cells. (See Dkt. No. 30-2 at 3-21.)

The Prison Litigation Reform Act ("PLRA") provides that, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Pursuant to this rule, prisoners must exhaust their administrative remedies regardless of the relief they seek, i.e., whether injunctive relief or money damages, even though the latter is unavailable pursuant to the administrative grievance process. Booth v. Churner, 532 U.S. 731, 741 (2001). Exhaustion also requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules, including deadlines. Woodford v. Ngo, 548 U.S. 81 (2006).

The PLRA requires that administrative remedies be exhausted prior to filing suit. McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002). The exhaustion requirement is not jurisdictional, but an affirmative defense that may be raised by a defendant in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b). See Jones v. Bock, 549 U.S. 199, 216 (2007) ("inmates are not required to specially plead or demonstrate exhaustion in their complaints"); Wyatt v. Terhune, 315 F.3d 1108, 1117-19 (9th Cir. 2003) (failure to exhaust is an affirmative defense). Defendants bear the burden of raising and proving the absence of exhaustion, and their failure to do so waives the defense. Id. at 1119.

"In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Wyatt, 315 F.3d at 1119. When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Id. at 1120; see also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005) ("mixed" complaints may proceed on exhausted claims). Thus, "if a complaint contains both good and bad claims, the

court proceeds with the good and leaves the bad." Jones, 549 U.S. at 221.

Defendants persuasively argue that these considerations, particularly the goal of according prison officials sufficient notice of a potentially remediable condition, are significant here, where plaintiff complains of past physical conditions of confinement that were not challenged, and therefore not documented, at the relevant time. The resulting constraints on now proving or disproving these allegations underscore the importance of administrative exhaustion.

In a statement of non-opposition, plaintiff concedes that he did not administratively exhaust the allegations of his complaint that challenge the physical condition of the interim cells in which he was confined, and the alleged treatment by staff while plaintiff was so confined, thus requiring dismissal of his Eighth Amendment claim on this basis. (See Dkt. No. 35 at 26-40, Dkt. No. 44, 45.) However, the fact of these interim placements remains relevant to plaintiff's remaining claims, particularly plaintiff's Fourteenth Amendment substantive due process claim that he was treated arbitrarily and capriciously. In addition, should plaintiff prevail, the measure of his damages may include reference to both the fact and alleged condition of his cell placements, particularly in light of plaintiff's CCCMS status and his allegedly increased feelings of paranoia as a result of the challenged conduct.

For these reasons, and subject to the noted qualifications, the court recommends dismissal of plaintiff's Eighth Amendment claim against defendant Phelps, based on the alleged physical condition of the holding cells and suicide cell in which plaintiff was temporarily confined, and the alleged treatment by staff while plaintiff was so confined.

III. Plaintiff's Motion for Preliminary Injunction

In his first motion for preliminary injunctive relief, filed April 18, 2011, plaintiff asserted, in a 145-page brief, that he was suffering a "long list of reprisals," included an assault; denial of showers and toilet; denial of exercise; mail tampering; food tampering; denial of adequate medical care; that staff was turning general population inmates against plaintiff in an effort to get him hurt or killed; and that plaintiff was being set up to be assaulted so the prison

wouldn't be held liable for plaintiff's back injury. (Dkt. No. 25 at 1-8.) Plaintiff sought an order of this court directing "defendants, their successors, agents and employees and all persons acting in concert with them to stop deliberately violating plaintiff's rights;" plaintiff also sought an order directing plaintiff's transfer to another prison. (Id. at 9.) The motion was denied by order filed July 28, 2011, on the grounds, inter alia, that plaintiff failed to identity any individual allegedly responsible for the challenged conduct, failed to demonstrate irreparable harm, and because the challenged conduct was not related to the allegations of this action. (Dkt. No. 31; see also Dkt. No. 29 (findings and recommendations).)

On August 2, 2011, plaintiff filed a second motion for preliminary injunctive relief, 55-pages in length. (Dkt. No. 32.) Plaintiff alleges therein that he is at risk of being killed or seriously injured by other inmates as a result of CSP-SAC staff improperly labeling plaintiff a "snitch." Plaintiff states that staff are harassing him and making him vulnerable to attack by other inmates, e.g., by housing mentally ill and dangerous inmates with plaintiff; by tampering with plaintiff's food, showers, and cell; and by providing inadequate medical care. Plaintiff seeks an order of this court directing CSP-SAC to protect plaintiff by placing him in a special needs unit, or by transferring him to another institution.

On August 24, 2011, the undersigned issued findings and recommendations recommending that plaintiff's motion be denied. (Dkt. No. 34.) The court found that plaintiff's current allegations, like those in his prior motion, are too imprecise and wide-ranging to warrant injunctive relief. While plaintiff's second motion is more precise, specifically alleging that defendant Phelps, in January 2010, knowingly moved a dangerous prisoner into plaintiff's cell (id. at 12-14), and thus touches upon matters in the pending action, the court found that this allegation failed to provide a basis for granting injunctive relief. Not only did the alleged event take place two years ago but, as the court noted, while plaintiff's "safety is fundamental to preserving the court's power to render a meaningful decision in this case . . . the instant motion fails to identify a specific harm that can or must be addressed by preliminary relief, or that is

required in order to preserve the matter for a decision on the merits." (Dkt. No. 34 at 3-4.) The court further noted that "prisoners have no reasonable expectation that they will be housed in a particular facility," and thus found that "[p]laintiff's request for an order directing his transfer to another prison, or to a specific program within CSP-SAC, is not a matter subject to preliminary injunctive relief." (Id. at 4.) Therefore, this court recommended that plaintiff's motion be denied. (Id. at 4-5.)

However, pursuant to objections filed by plaintiff on September 7, 2011 (Dkt. No. 35), the court vacated its findings and recommendations, and directed defendants to file a response. (See Dkt. No. 39.) The court observed:

> The instant motion [Dkt. No. 32] broadly asserts that plaintiff is at risk of being killed or seriously injured by other inmates as a result of being set up by CSP-SAC staff members. Plaintiff identifies several CSP-SAC staff members, but asserts that defendant Phelps is the most harassing and threatening toward plaintiff. (See Dkt. No. 32 at 8, 12-14.) On August 24, 2011, this court issued Findings and Recommendations, recommending that the motion be denied because it "fails to identify a specific harm that can or must be addressed by preliminary relief, or that is required in order to preserve the matter for a decision on the merits." (Dkt. No. 34 at 4.) The court further noted, based on plaintiff's statement that he intended to file a new civil rights action against several CSP-SAC members, that "[t]he majority of plaintiff's claims set forth in the instant motion will not be heard on the merits in the underlying action. Rather, it appears that these claims, and the staff members against whom they are made, may be addressed in plaintiff's anticipated future action(s)." (Id.) However, the court did note that defendant "Phelps, like all CSP-SAC staff members, is required to meet constitutional standards in his employment, which includes protecting plaintiff from harm." (Id.)
>
> In his objections (Dkt. No. 35), plaintiff states, "I'm not asking for this court to do anything except stopping CSP-SAC staff officials from killing me." (Dkt. No. 35 at 5; reiterated throughout plaintiff's objections). Given the alleged seriousness of plaintiff's repeated assertions, the court will vacate its findings and recommendations, and require that defendants file a response to plaintiff's pending motion for preliminary injunctive relief.

(Dkt. No. 39 at 1-2.)

Defendants timely filed an opposition to plaintiff's motion, addressing each of the

five specific events[3] that plaintiff contends demonstrate the existence of a plot to harm him. (See Dkt. No. 47.) As previously noted, only one of these events is related to the claims alleged in plaintiff's complaint, viz., that defendant Phelps, in January 2010, deliberately housed plaintiff with a mentally unstable inmate, which led to a physical altercation. (Dkt. No. 32 at 12-14.) Plaintiff's motion makes no other, more current, allegations against Phelps, and no allegations at all against Hernandez.

Defendants suggest that plaintiff's myriad accusations "are implausible on their face," and the "[i]t is far more likely that plaintiff has a mental condition that causes him to perceive threats that do not actually exist." (Dkt. No. 47 at 4.) Defendants have submitted, under seal, the declaration of plaintiff's prison psychologist, Dr. S. Bergman, Ph.D. (Dkt. No. 50.) Dr. Bergman's declaration, which the court has now reviewed, supports defendants' theory.

Moreover, defendants state, with a supporting declaration from CSP-SAC Correctional Counselor J. Polich, that plaintiff is currently assigned to a single cell, pending transfer to another prison within California. (Dkt. No. 47 at 1,4; Dkt. No. 48.) This housing assignment gives plaintiff "walk-alone status," which accords him private use of an enclosed, open-air, exercise facility, without the presence of any other inmates. (Id.) Defendants assert that "plaintiff's current safety is, therefore, assured because no other inmates have access to him. And [p]laintiff's continuing concerns that CSP-SAC presents a threat to him will be resolved

---

[3] In addition to plaintiff's allegations against defendant Phelps, plaintiff alleges that: (1) that officer McElroy placed plaintiff at risk of assault by other inmates, by implying that plaintiff is a "snitch," or a child molester; (2) that CSP-SAC Chief Deputy Warden Macomber keeps scheduling plaintiff's classification committee meeting at the same time that plaintiff is scheduled to undergo a colonoscopy, in an effort to hold the meeting without plaintiff, so that plaintiff can be ordered back to a double cell where he can more easily be assaulted by other inmates (thus, plaintiff states that he keeps declining a colonoscopy); (3) that Dr. Dillon keeps scheduling plaintiff for a blood draw, on the pretenses that plaintiff is infected with Hepatitis C, although she really intends to inject plaintiff with the virus so that he can be moved to the infectious disease ward, where it would be easier for other inmates to assault him; and (4) that a flood of waste water in the cell next to plaintiff was deliberately engineered by plumbers for the purpose of requiring plaintiff's movement to another location where he could more easily be assaulted. (See generally Dkt. No. 32.)

once he is transferred out of CSP-SAC in the near future." (Dkt. No. 47 at 4.)

Plaintiff concedes that he is currently housed in a single cell (Dkt. No. 51 at 1), but reiterates his several reasons for seeking a preliminary injunction.

As this court previously emphasized, a preliminary injunction should not issue unless necessary to prevent threatened injury that would impair the court's ability to grant effective relief in a pending action. Fed. R. Civ. P. 65; Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984); Gon v. First State Ins. Co., 871 F.2d 863 (9th Cir. 1989). The principal purpose of preliminary injunctive relief is to preserve the court's power to render a meaningful decision pursuant to a trial on the merits. See 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2947 (2d ed. 2010). Implicit in this required showing is that the relief awarded is only temporary, and that there will be a full hearing on the merits of the claims when the action is brought to trial.

The court again finds that plaintiff has failed to demonstrate the possibility of irreparable harm in the absence of preliminary injunctive relief, particularly to plaintiff's safety. The court further finds that plaintiff has identified no matter in his motion that must be addressed by preliminary injunctive relief in order to preserve the issue for a decision on the merits in the present action. This court therefore recommends, once again, that plaintiff's second motion for preliminary injunctive relief be denied.

V. Admonition

Plaintiff is cautioned that a litigant proceeding in forma pauperis may suffer restricted access to the court where it is determined that he has filed excessive motions in a pending action. DeLong v. Hennessey, 912 F.2d 1144 (9th Cir. 1990); see also Tripati v. Beaman, 878 F2d 351, 352 (10th Cir. 1989). The court finds that plaintiff's motions for preliminary injunctive relief filed in this action, both in content and length, have been frivolous. Plaintiff is directed to refrain from filing in this action any further motion for injunctive relief, absent an extraordinary and compelling reason that is clearly related to the merits of this case.

Should plaintiff fail to abide by this admonition, the court will consider whether it is necessary to restrict plaintiff's access to the court.

V. Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss plaintiff's Eighth Amendment claim against defendant Phelps (Dkt. No. 30), should be granted.

2. This action should proceed on plaintiff's substantive due process and equal protection claims against defendant Phelps, and plaintiff's due process claim against defendant Hernandez.

3. Defendants should be directed to file an answer, within twenty-one days after the adoption of these findings and recommendations, on plaintiff's remaining claims.

4. Plaintiff's second motion for a preliminary injunction (Dkt. No. 32), should be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 21 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within 14 days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 26, 2012

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

asbe1494.mtd.pi