1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10    TONY ASBERRY,

11              Plaintiff,                         No. 2:09-cv-1494 MCE KJN P

12         vs.

13    MATHEW CATE, et al.,

14              Defendants.                  FINDINGS AND RECOMMENDATIONS

15    _____/

16              Plaintiff is a state prisoner, incarcerated at California State Prison-Sacramento

17    ("CSP-SAC"),[1] who proceeds without counsel and in forma pauperis, with a civil rights

18    complaint filed pursuant to 42 U.S.C. § 1983.  This action proceeds on the original complaint,

19    against defendants Phelps and Hernandez.[2]  Presently pending before the court are:  (1)

20    defendants' motion to dismiss plaintiff's Eighth Amendment claim; and (2) plaintiff's second

21    motion for a preliminary injunction.  For the reasons that follow, this court recommends that

22    defendants' motion to dismiss be granted, and plaintiff's motion for preliminary injunctive relief

23    _____

24         [1]  All references to "CSP-S," in documents referenced and quoted throughout these
      findings and recommendations, have been changed to "CSP-SAC," for purposes of uniformity.

25

26         [2]  On April 15, 2011, defendants O'Brien, J. Walker, Bauser and Cate were dismissed
      from this action.  (Dkt. No. 24; see also Dkt. Nos. 15, 17, 18.)

                                              1

1  be denied.

2  I.  Background

3          This action proceeds against defendants Phelps and Hernandez, based on the

4  following allegations, as summarized by the undersigned upon the initial screening of the

5  complaint, pursuant to 28 U.S.C. § 1915A:

6          Plaintiff, who is black, alleges that in April 2008, after plaintiff's
        cellmate was placed in administrative segregation, defendant
7          correctional officer Phelps, a sergeant, ordered plaintiff to find
        himself another cellmate so that Phelps could place two of his
8          "favorite" inmates, both white, in plaintiff's cell located in
        CSP-S's "B-yard, Building Two."  Plaintiff states that he found an
9          inmate to cell with . . . , signed and turned in the necessary
        paperwork, but within the hour Phelps cancelled the move.
10          Plaintiff alleges that Phelps again ordered plaintiff to find a
        cellmate.  Plaintiff alleges that there were no other open cells, and
11          thus he was unable to find another cellmate.  Plaintiff alleges that
        Phelps responded by ordering plaintiff cuffed; that correctional
12          officer "John Doe 1" painfully cuffed plaintiff, verbally assaulted
        him, stripped plaintiff to his boxer shorts, and then forced plaintiff
13          to stand in a holding cage in the cold for more than two hours.
        Plaintiff alleges that when he requested to use a restroom,
14          correctional officer "John Doe 2" told plaintiff to "piss on
        yourself," and stated that Phelps had told him to give plaintiff
15          nothing.

16          Plaintiff alleges that he was next moved to a suicide cell, for a
        period of approximately twelve hours.  Plaintiff alleges that the cell
17          was filthy, smelled of urine and feces, had no toilet paper, mattress,
        or covers, and that plaintiff was required to sleep on the floor in his
18          boxer shorts.  Plaintiff was then placed in a cell in "Building
        Three."  However, plaintiff alleges that Phelps again summoned
19          plaintiff and ordered him to find himself a cellmate.  Plaintiff
        alleges that he was unable to do so, and, as a result, correctional
20          officer "John Doe 3" cuffed, stripped, and threatened plaintiff, and
        placed him in a holding cage for six hours with no protection from
21          the weather.

22          Plaintiff was then moved to administrative segregation.  Plaintiff
        alleges that Phelps and correctional officer "John Doe 4" falsified
23          the necessary documents, and that correctional officer "John Doe
        5" affirmed the placement despite interviewing plaintiff.  Plaintiff
24          contends that throughout this period he felt threatened and unsafe;
        that he is a patient within the Correctional Clinical Case
25          Management System ("CCCMS"), and felt increased paranoia; that
        he was afraid to return to B-yard and refused to leave
26          administrative segregation until defendant CSP-S Warden Walker

(who allegedly "did nothing about the situation in B-yard that led to plaintiff being in ad/seg in the first place") "personally ensured" plaintiff's safety.

. . . Plaintiff appears to state potentially cognizable claims against defendant Phelps under the Eighth Amendment's proscription against cruel and unusual punishment, the Fourteenth Amendment's protections against arbitrary and capricious punishment [substantive due process], and the Fourteenth Amendment's right to equal protection (right to be free from racial discrimination). Plaintiff's equal protection challenge is also made pursuant to the California Constitution, Article I, section 7. Accordingly, the court will authorize service of plaintiff's complaint on defendant Phelps.

. . . Plaintiff may [also] state a potentially cognizable due process claim against defendant Hernandez, premised on the factual allegations set forth in plaintiff's attached administrative grievances, which are not repeated (only referenced) in the complaint. [These allegations include the contention that, in April 2008, when plaintiff was initially removed from his cell, Hernandez boxed-up plaintiff's personal property, delayed preparing an inventory of plaintiff's items, and failed to ensure the return of two CDs, a fan, and a radio.] . . . The court will authorize service on defendant Hernandez in order to clarify plaintiff's factual allegations and assess the merits of plaintiff's claim against him.

(Dkt. No. 7 at 3-5.)

II. Defendants' Motion to Dismiss

Defendants move to dismiss plaintiff's Eighth Amendment claim against defendant Phelps, on the ground that plaintiff failed to administratively exhaust his allegations of mistreatment when placed in the holding cages, and his allegation that the suicide cell in which he was placed was "filthy." See Estelle v. Gamble, 429 U.S. 97, 102 (1976) (the Eighth Amendment prohibits the imposition of cruel and unusual punishment, and embodies "broad and idealistic concepts of dignity, civilized standards, humanity and decency") (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)).

Review of the pertinent administrative grievance (Log. No. SAC-08-01839), supports defendants' representations: while plaintiff complained of Phelps' allegedly capricious and racially motivated conduct depriving plaintiff of his double-cell status, including temporary

1    placement in holding cells and a suicide cell, and then in administrative segregation, the

2    grievance does not address the alleged physical condition of the interim cells, or plaintiff's

3    alleged treatment by staff during his placement those cells.  (See Dkt. No. 30-2 at 3-21.)

4            The Prison Litigation Reform Act ("PLRA") provides that, "[n]o action shall be

5    brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by

6    a prisoner confined in any jail, prison, or other correctional facility until such administrative

7    remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Pursuant to this rule, prisoners

8    must exhaust their administrative remedies regardless of the relief they seek, i.e., whether

9    injunctive relief or money damages, even though the latter is unavailable pursuant to the

10   administrative grievance process.  Booth v. Churner, 532 U.S. 731, 741 (2001).  Exhaustion also

11   requires that the prisoner complete the administrative review process in accordance with all

12   applicable procedural rules, including deadlines.  Woodford v. Ngo, 548 U.S. 81 (2006).

13           The PLRA requires that administrative remedies be exhausted prior to filing suit.

14   McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).  The exhaustion requirement is not

15   jurisdictional, but an affirmative defense that may be raised by a defendant in a motion to dismiss

16   pursuant to Federal Rule of Civil Procedure 12(b).  See Jones v. Bock, 549 U.S. 199, 216 (2007)

17   ("inmates are not required to specially plead or demonstrate exhaustion in their complaints");

18   Wyatt v. Terhune, 315 F.3d 1108, 1117-19 (9th Cir. 2003) (failure to exhaust is an affirmative

19   defense).  Defendants bear the burden of raising and proving the absence of exhaustion, and their

20   failure to do so waives the defense.  Id. at 1119.

21           "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the

22   court may look beyond the pleadings and decide disputed issues of fact."  Wyatt, 315 F.3d at

23   1119.  When the district court concludes that the prisoner has not exhausted administrative

24   remedies on a claim, "the proper remedy is dismissal of the claim without prejudice."  Id. at

25   1120; see also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005) ("mixed" complaints may

26   proceed on exhausted claims).  Thus, "if a complaint contains both good and bad claims, the

4

1    court proceeds with the good and leaves the bad." <u>Jones</u>, 549 U.S. at 221.

2            Defendants persuasively argue that these considerations, particularly the goal of

3    according prison officials sufficient notice of a potentially remediable condition, are significant

4    here, where plaintiff complains of past physical conditions of confinement that were not

5    challenged, and therefore not documented, at the relevant time.  The resulting constraints on now

6    proving or disproving these allegations underscore the importance of administrative exhaustion.

7            In a statement of non-opposition, plaintiff concedes that he did not

8    administratively exhaust the allegations of his complaint that challenge the physical condition of

9    the interim cells in which he was confined, and the alleged treatment by staff while plaintiff was

10   so confined, thus requiring dismissal of his Eighth Amendment claim on this basis.  (<u>See</u> Dkt.

11   No. 35 at 26-40, Dkt. No. 44, 45.)  However, the fact of these interim placements remains

12   relevant to plaintiff's remaining claims, particularly plaintiff's Fourteenth Amendment

13   substantive due process claim that he was treated arbitrarily and capriciously.  In addition, should

14   plaintiff prevail, the measure of his damages may include reference to both the fact and alleged

15   condition of his cell placements, particularly in light of plaintiff's CCCMS status and his

16   allegedly increased feelings of paranoia as a result of the challenged conduct.

17           For these reasons, and subject to the noted qualifications, the court recommends

18   dismissal of plaintiff's Eighth Amendment claim against defendant Phelps, based on the alleged

19   physical condition of the holding cells and suicide cell in which plaintiff was temporarily

20   confined, and the alleged treatment by staff while plaintiff was so confined.

21   III.  <u>Plaintiff's Motion for Preliminary Injunction</u>

22           In his first motion for preliminary injunctive relief, filed April 18, 2011, plaintiff

23   asserted, in a 145-page brief, that he was suffering a "long list of reprisals," included an assault;

24   denial of showers and toilet; denial of exercise; mail tampering; food tampering; denial of

25   adequate medical care; that staff was turning general population inmates against plaintiff in an

26   effort to get him hurt or killed; and that plaintiff was being set up to be assaulted so the prison

1   wouldn't be held liable for plaintiff's back injury.  (Dkt. No. 25 at 1-8.)  Plaintiff sought an order

2   of this court directing "defendants, their successors, agents and employees and all persons acting

3   in concert with them to stop deliberately violating plaintiff's rights;" plaintiff also sought an

4   order directing plaintiff's transfer to another prison. (Id. at 9.)  The motion was denied by order

5   filed July 28, 2011, on the grounds, inter alia, that plaintiff failed to identity any individual

6   allegedly responsible for the challenged conduct, failed to demonstrate irreparable harm, and

7   because the  challenged conduct was not related to the allegations of this action.  (Dkt. No. 31;

8   see also Dkt. No. 29 (findings and recommendations).)

9          On August 2, 2011, plaintiff filed a second motion for preliminary injunctive

10  relief, 55-pages in length.  (Dkt. No. 32.)  Plaintiff alleges therein that he is at risk of being killed

11  or seriously injured by other inmates as a result of CSP-SAC staff improperly labeling plaintiff a

12  "snitch."  Plaintiff states that staff are harassing him and making him vulnerable to attack by

13  other inmates, e.g., by housing mentally ill and dangerous inmates with plaintiff; by tampering

14  with plaintiff's food, showers, and cell; and by providing inadequate medical care.  Plaintiff

15  seeks an order of this court directing CSP-SAC to protect plaintiff by placing him in a special

16  needs unit, or by transferring him to another institution.

17         On August 24, 2011, the undersigned issued findings and recommendations

18  recommending that plaintiff's motion be denied.  (Dkt. No. 34.)  The court found that plaintiff's

19  current allegations, like those in his prior motion, are too imprecise and wide-ranging to warrant

20  injunctive relief.  While plaintiff's second motion is more precise, specifically alleging that

21  defendant Phelps, in January 2010, knowingly moved a dangerous prisoner into plaintiff's cell

22  (id. at 12-14), and thus touches upon matters in the pending action, the court found that this

23  allegation failed to provide a basis for granting injunctive relief.  Not only did the alleged event

24  take place two years ago but, as the court noted, while plaintiff's "safety is fundamental to

25  preserving the court's power to render a meaningful decision in this case . . . the instant motion

26  fails to identify a specific harm that can or must be addressed by preliminary relief, or that is

1   required in order to preserve the matter for a decision on the merits." (Dkt. No. 34 at 3-4.)  The

2   court further noted that "prisoners have no reasonable expectation that they will be housed in a

3   particular facility," and thus found that "[p]laintiff's request for an order directing his transfer to

4   another prison, or to a specific program within CSP-SAC, is not a matter subject to preliminary

5   injunctive relief." (Id. at 4.)  Therefore, this court recommended that plaintiff's motion be

6   denied.  (Id. at 4-5.)

7           However, pursuant to objections filed by plaintiff on September 7, 2011 (Dkt. No.

8   35), the court vacated its findings and recommendations, and directed defendants to file a

9   response.  (See Dkt. No. 39.)  The court observed:

> The instant motion [Dkt. No. 32] broadly asserts that plaintiff is at
> risk of being killed or seriously injured by other inmates as a result
> of being set up by CSP-SAC staff members.  Plaintiff identifies
> several CSP-SAC staff members, but asserts that defendant Phelps
> is the most harassing and threatening toward plaintiff.  (See Dkt.
> No. 32 at 8, 12-14.)  On August 24, 2011, this court issued
> Findings and Recommendations, recommending that the motion be
> denied because it "fails to identify a specific harm that can or must
> be addressed by preliminary relief, or that is required in order to
> preserve the matter for a decision on the merits." (Dkt. No. 34 at
> 4.)  The court further noted, based on plaintiff's statement that he
> intended to file a new civil rights action against several CSP-SAC
> members, that "[t]he majority of plaintiff's claims set forth in the
> instant motion will not be heard on the merits in the underlying
> action.  Rather, it appears that these claims, and the staff members
> against whom they are made, may be addressed in plaintiff's
> anticipated future action(s)." (Id.)  However, the court did note
> that defendant "Phelps, like all CSP-SAC staff members, is
> required to meet constitutional standards in his employment, which
> includes protecting plaintiff from harm." (Id.)
>
> In his objections (Dkt. No. 35), plaintiff states, "I'm not asking for
> this court to do anything except stopping CSP-SAC staff officials
> from killing me." (Dkt. No. 35 at 5; reiterated throughout
> plaintiff's objections).  Given the alleged seriousness of plaintiff's
> repeated assertions, the court will vacate its findings and
> recommendations, and require that defendants file a response to
> plaintiff's pending motion for preliminary injunctive relief.

25  (Dkt. No. 39 at 1-2.)

26          Defendants timely filed an opposition to plaintiff's motion, addressing each of the

1   five specific events[3] that plaintiff contends demonstrate the existence of a plot to harm him.  (See

2   Dkt. No. 47.)  As previously noted, only one of these events is related to the claims alleged in

3   plaintiff's complaint, viz., that defendant Phelps, in January 2010, deliberately housed plaintiff

4   with a mentally unstable inmate, which led to a physical altercation.  (Dkt. No. 32 at 12-14.)

5   Plaintiff's motion makes no other, more current, allegations against Phelps, and no allegations at

6   all against Hernandez.

7           Defendants suggest that plaintiff's myriad accusations "are implausible on their

8   face," and the "[i]t is far more likely that plaintiff has a mental condition that causes him to

9   perceive threats that do not actually exist."  (Dkt. No. 47 at 4.)  Defendants have submitted,

10  under seal, the declaration of plaintiff's prison psychologist, Dr. S. Bergman, Ph.D.  (Dkt. No.

11  50.)  Dr. Bergman's declaration, which the court has now reviewed, supports defendants' theory.

12          Moreover, defendants state, with a supporting declaration from CSP-SAC

13  Correctional Counselor J. Polich, that plaintiff is currently assigned to a single cell, pending

14  transfer to another prison within California.  (Dkt. No. 47 at 1,4; Dkt. No. 48.)  This housing

15  assignment gives plaintiff "walk-alone status," which accords him private use of an enclosed,

16  open-air, exercise facility, without the presence of any other inmates.  (Id.)  Defendants assert

17  that "plaintiff's current safety is, therefore, assured because no other inmates have access to him.

18  And [p]laintiff's continuing concerns that CSP-SAC presents a threat to him will be resolved

19

20          [3]  In addition to plaintiff's allegations against defendant Phelps, plaintiff alleges that:  (1)
    that officer McElroy placed plaintiff at risk of assault by other inmates, by implying that plaintiff
21  is a "snitch," or a child molester; (2) that CSP-SAC Chief Deputy Warden Macomber keeps
    scheduling plaintiff's classification committee meeting at the same time that plaintiff is
22  scheduled to undergo a colonoscopy, in an effort to hold the meeting without plaintiff, so that
    plaintiff can be ordered back to a double cell where he can more easily be assaulted by other
23  inmates (thus, plaintiff states that he keeps declining a colonoscopy); (3) that Dr. Dillon keeps
    scheduling plaintiff for a blood draw, on the pretenses that plaintiff is infected with Hepatitis C,
24  although she really intends to inject plaintiff with the virus so that he can be moved to the
    infectious disease ward, where it would be easier for other inmates to assault him; and (4) that a
25  flood of waste water in the cell next to plaintiff was deliberately engineered by plumbers for the
    purpose of requiring plaintiff's movement to another location where he could more easily be
26  assaulted.  (See generally Dkt. No. 32.)

1  once he is transferred out of CSP-SAC in the near future." (Dkt. No. 47 at 4.)

2          Plaintiff concedes that he is currently housed in a single cell (Dkt. No. 51 at 1),

3  but reiterates his several reasons for seeking a preliminary injunction.

4          As this court previously emphasized, a preliminary injunction should not issue

5  unless necessary to prevent threatened injury that would impair the court's ability to grant

6  effective relief in a pending action.  Fed. R. Civ. P. 65; <u>Sierra On-Line, Inc. v. Phoenix Software,</u>

7  <u>Inc.</u>, 739 F.2d 1415, 1422 (9th Cir. 1984); <u>Gon v. First State Ins. Co.</u>, 871 F.2d 863 (9th Cir.

8  1989).  The principal purpose of preliminary injunctive relief is to preserve the court's

9  power to render a meaningful decision pursuant to a trial on the merits.  <u>See</u> 11A Charles Alan

10  Wright & Arthur R. Miller, Federal Practice and Procedure, § 2947 (2d ed. 2010).  Implicit in

11  this required showing is that the relief awarded is only temporary, and that there will be a full

12  hearing on the merits of the claims when the action is brought to trial.

13          The court again finds that plaintiff has failed to demonstrate the possibility of

14  irreparable harm in the absence of preliminary injunctive relief, particularly to plaintiff's safety.

15  The court further finds that plaintiff has identified no matter in his motion that must be addressed

16  by preliminary injunctive relief in order to preserve the issue for a decision on the merits in the

17  present action.  This court therefore recommends, once again, that plaintiff's second motion for

18  preliminary injunctive relief be denied.

19  V.  <u>Admonition</u>

20          Plaintiff is cautioned that a litigant proceeding in forma pauperis may suffer

21  restricted access to the court where it is determined that he has filed excessive motions in a

22  pending action.  <u>DeLong v. Hennessey</u>, 912 F.2d 1144 (9th Cir. 1990); <u>see also</u> <u>Tripati v.</u>

23  <u>Beaman</u>, 878 F2d 351, 352 (10th Cir. 1989).  The court finds that plaintiff's motions for

24  preliminary injunctive relief filed in this action, both in content and length, have been frivolous.

25  Plaintiff is directed to refrain from filing in this action any further motion for injunctive relief,

26  absent an extraordinary and compelling reason that is clearly related to the merits of this case.

1   Should plaintiff fail to abide by this admonition, the court will consider whether it is necessary to

2   restrict plaintiff's access to the court.

3   V.   Conclusion

4              For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

5              1.   Defendants' motion to dismiss plaintiff's Eighth Amendment claim against

6   defendant Phelps (Dkt. No. 30), should be granted.

7              2.   This action should proceed on plaintiff's substantive due process and equal

8   protection claims against defendant Phelps, and plaintiff's due process claim against defendant

9   Hernandez.

10             3.   Defendants should be directed to file an answer, within twenty-one days after

11  the adoption of these findings and recommendations, on plaintiff's remaining claims.

12             4.   Plaintiff's second motion for a preliminary injunction (Dkt. No. 32), should be

13  denied.

14             These findings and recommendations are submitted to the United States District

15  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 21 days

16  after being served with these findings and recommendations, any party may file written

17  objections with the court and serve a copy on all parties.  Such a document should be captioned

18  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

19  objections shall be filed and served within 14 days after service of the objections.  The parties are

20  advised that failure to file objections within the specified time may waive the right to appeal the

21  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

22  DATED:  January 26, 2012

23

24                                   _____
                                     KENDALL J. NEWMAN
                                     UNITED STATES MAGISTRATE JUDGE
25  asbe1494.mtd.pi

26

10